# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| SAORI QUINN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:19-05010-CV-RK |
| | ) | |
| JUSTIN LEVI QUINN, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

On February 22, 2019, the Court held an ex parte telephone conference concerning Petitioner's Motion. (Doc. 7.) At the conference, the following temporary relief was granted: (1) Respondent was ordered to not remove Petitioner and Respondent's minor biological child ("the Child") from the Western District of Missouri pending resolution of this matter; (2) Respondent was ordered to surrender the Child's passport pending resolution of this matter; (3) the Court set a hearing for March 1, 2019, in Springfield, Missouri, to decide whether the Child should be returned to Japan, and (4) Respondent was directed to show cause at the hearing on March 1, 2019, why the Child should not be returned to Japan. (Doc. 7.) A return of service of the Complaint and the Notice of Hearing was filed on February 25, 2019. (Docs. 8, 9.) On March 1, 2019, the Court granted the parties' joint motion to continue the hearing. (Doc. 18.) The hearing was rescheduled for March 21, 2019. (Doc. 21.)

On March 21, 2019, a trial of this action on the merits was held. (Doc. 33.) Petitioner's counsel appeared in person, and Petitioner appeared in person. Respondent's counsel appeared in person, and Respondent appeared in person. The trial of the action did not conclude on Mach 21, 2019, and was continued to June 18, 2019. (Doc. 46.) On June 18, 2019, the trial of the action resumed. Both parties presented expert testimony as to Petitioner's mental state and ability to care for the Child. Petitioner's counsel appeared in person, and Petitioner appeared in person. Respondent's counsel appeared in person, and Respondent appeared in person. After careful consideration of the evidence and for the reasons below, the Court finds, by a preponderance of the evidence, that Respondent has wrongfully retained custody of the Child since August 2018;

the Child currently resides with Respondent in Mount Vernon, Missouri; and the Child shall be returned to Japan with Petitioner immediately.

## Background

Petitioner filed her Verified Complaint (Doc. 1) for the return of her son pursuant to the International Child Abduction Remedies Act. ("ICARA"), 22 U.S.C. § 9001, *et. seq.* Based on the facts alleged in the Verified Complaint and testimony elicited at the hearing (doc. 1), the Court makes the following findings: Petitioner and Respondent were married in Japan on September 5, 2014, although Respondent has recently indicated to Petitioner that he intends to file for divorce. Petitioner and Respondent lived together in Japan from September 2013 through May 2018, thereafter, Respondent returned to the United States. Petitioner and Respondent are the biological parents of the Child, who was born in Japan in April 2014. Petitioner currently resides in Tokyo, Japan. Respondent currently resides in Mount Vernon, Missouri.

Petitioner and the Child came to the United States and the Western District of Missouri to visit Respondent in August 2018. On October 15, 2018, Petitioner returned to Japan without the Child for a medical procedure. At that time, Respondent agreed to send the Child back to Japan on November 6, 2018; however, Respondent failed to return the Child to Petitioner in Japan on November 6, 2018, and at any point thereafter.

## Legal Standard

This Court has jurisdiction over this matter pursuant to the ICARA and the Hague Convention. The purpose of the Hague Convention and ICARA is to "deter parents who are dissatisfied with current custodial arrangements from abducting their children and seeking a more favorable custody ruling in another country." *Navani v. Shahani*, 496 F.3d 1121, 1124 (10th Cir. 2007). "[A] primary purpose of the Convention [] [is] to restore the status quo ante and to deter parents from crossing international boundaries in search of a more sympathetic court." *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995). However, the Hague Convention provides no substantive rights and does not allow the court in which a Hague Convention action is filed to consider the merits of underlying child custody issues. *Id.* at 372. ICARA specifically "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4).

To obtain the relief sought in her Verified Complaint, Petitioner must prove the following by a preponderance of the evidence: (1) the Child was a habitual resident of Japan at the time the

Child was wrongfully retained by Respondent; (2) the Child was wrongfully retained in violation of Petitioner's custody rights under Japanese law; and (3) Petitioner was exercising her custody rights over the Child at the time the Child was wrongfully retained. 22 U.S.C. § 9003(e)(1)(A). The petitioner has the burden to prove that the child has been "wrongfully removed or retained" from the child's "habitual residence." 22 U.S.C. § 9003(e)(1)(A); Hague Convention, art. 3. *See also McCubbin v. McCubbin*, 2006 Dist. LEXIS 43890, at *10 (W.D. Mo. June 28, 2006) (The petitioner must show by a preponderance of the evidence that a child was wrongfully in the United States and away from his or her habitual residence).

Petitioner need not provide further proof after showing the child was removed from the habitual residence unless Respondent asserts a defense accepted by the Hague Convention. *See* 22 U.S.C. § 9003(e) ("a respondent who opposes the return of the child has the burden of establishing . . . by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and . . . by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies").

## Discussion

This Court has jurisdiction over this matter. ICARA provides that state and federal courts have concurrent original jurisdiction to consider an action filed by a foreign parent to recover a child wrongfully removed to or retained within the United States. 22 U.S.C. § 9003(a). The Convention went into effect between the United States and Japan on April 1, 2014, upon Japan's accession to the Convention. The Hague Convention applies only if the child is abducted from one signatory nation to another. 22 U.S.C. § 9001(a)(4); Hague Convention, Art. 1(b). Here, Petitioner alleges the Child was wrongfully kept from his regular residence in Japan.

### I. Elements

#### 1. Habitual Residence

First, the Court finds that Petitioner has shown by a preponderance of the evidence that the Child is a habitual resident of Japan. In order to prevail on a petition to return a child under the Hague Convention, a petitioner has the burden to prove, by preponderance of the evidence, that the child has been "wrongfully removed or retained" from the child's "habitual residence." 22 U.S.C. § 9003(e)(1)(A); Hague Convention, art. 3; *Rydder*, 49 F.3d at 372. Although the term "habitual residence" is not defined in the Convention, the Eighth Circuit has found that "there is no real distinction between habitual and ordinary residence." *Rydder*, 49 F.3d at 373 (citation

omitted). A child's "habitual residence" is determined at the time immediately prior to the incident alleged to constitute a wrongful removal or retention - the country from which the child came, not the country to which he was wrongfully removed. *Silverman v. Silverman*, 338 F.3d 886, 897 (8th Cir. 2003). A parent cannot unilaterally create a new habitual residence by wrongfully removing or sequestering a child. *Feder v. Evans-Feder,* 63 F.3d 217, 224 (3rd Cir. 1995). The determination of habitual residence is primarily a fact-based determination and not one which is encumbered by legal technicalities; therefore, a court must look at the facts, the shared intentions of the parties, the history of the child's location and the settled nature of the family prior to the facts giving rise to the request for return. *Id.* at 224.

Here, the Court finds that Petitioner has shown by a preponderance of the evidence that the Child is a habitual residence of Japan. Petitioner's Complaint provides the Child's birth certificate showing the Child was born in Japan. The Complaint also provides the Child's daycare records which demonstrate the Child attended daycare on a regular basis in Japan. Accordingly, the Court finds that the Child's residence immediately prior to Respondent's wrongful retention was Japan; therefore, Petitioner has shown by a preponderance of the evidence that the Child was a habitual residence of Japan at the time of his retention.

### 2. Wrongful Retention

Second, Petitioner has proven by a preponderance of the evidence that the Child was wrongfully retained in violation of Petitioner's custody rights under Japanese law. If it is determined the child has been removed from their habitual residence, a petitioner must show by a preponderance of the evidence that the removal was wrongful. 22 U.S.C. § 9003(e)(1).; Hague Convention, art. 3. The Convention provides that the removal or retention of a child is "wrongful" whenever:

> A. It is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> B. At the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3. For the removal or retention to be wrongful, it is enough to show that the rights of custody were either being exercised or that they would have been exercised if not for the actions of the person alleged to have wrongfully removed or retained the child. *Id.*

4

Both Petitioner and Respondent testified that Petitioner's travel from Japan to the United States was intended to be a temporary visit, and at the conclusion of the visit, Petitioner and the Child would return to Japan. The Child would resume living in Japan with Petitioner after the visit concluded. Accordingly, Petitioner has shown by a preponderance of the evidence that Respondent's wrongful retention of the Child was in direct contravention to Petitioner's custody rights under Japanese law.

### 3. Exercise of Custody Rights

Third, Petitioner has shown by a preponderance of the evidence that she was exercising her custody rights over the Child at the time of the wrongful retention. The parent seeking return of the child is considered to have been "exercising" custody rights even though physical care of the child may have been turned over to the parent alleged to have "wrongfully removed or retained" the children. *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996).

> The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence. Ordering a return remedy does not alter the existing allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner.

Abbott v. Abbott, 560 U.S. 1, 19-20 (2010) (internal citations omitted)).

Here, Petitioner has the right to determine her child's country of residence and parental custody rights for the care of her child under Japanese law, which are rights of custody within the meaning of the Hague Convention. It does not change our analysis that Petitioner left the Child with Respondent for a pre-determined period of time.

### II. Defenses

When a petitioner establishes that a wrongful removal of the child from his or her state of habitual residence has occurred, the child must immediately be returned to the state of habitual residence unless a respondent demonstrates, by clear and convincing evidence, that an affirmative defense applies. *Rydder*, 49 F.3d at 372. The affirmative defenses are narrowly construed. *Id*. The affirmative defenses available to a respondent are: (1) a grave risk of harm to the child; (2) returning the child would be inconsistent with fundamental principles of human rights and fundamental freedoms; (3) the mature child exception applies; (4) Petitioner consented or

5

acquiesced to the removal or retention; or (5) the child has been in the new country for over a year, and is well-settled there. Hague Convention, art. 12, 13, 20.

Respondent argues the Child would be subjected to a grave risk of harm if the Child were returned to Japan with Petitioner. However, the Court finds that Respondent has not shown by clear and convincing evidence that the Child will be subjected to a grave risk of harm if he is returned to Japan. Hague Convention, art. 13(b). Petitioner provided all mental health records for this Court's consideration. The Court has reviewed these medical records. Further, both parties presented expert testimony and lodged oral arguments as to Petitioner's ability to manager her diagnosis as well as care for the Child. After reviewing the medical records, reviewing the filings submitted by the parties, and considering the expert's testimony, the Court concludes that the Child would not be subject to a grave risk of harm if the Child returned to Japan with Petitioner. Respondent does not argue that any other exception applies.

## Conclusion

After careful consideration of the evidence, the Court finds Petitioner has satisfied her burden to show by a preponderance of the evidence that the Child was wrongfully retained from the Child's habitual residence of Japan, and Respondent has not shown by clear and convincing evidence that the Child would be subjected to a grave risk of harm or an intolerable situation if the Child is returned to Japan with Petitioner. Accordingly, **IT IS THEREFORE ORDERED** that the Child shall be returned to Japan with Petitioner immediately. Any further custody determinations or proceedings shall be commenced under Japanese law. The Child's passport(s) is currently held in the Clerk's Office at the United States District Court in Springfield, Missouri. The passport(s) shall be turned over to Petitioner immediately.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 18, 2019